# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| GILDARDO MONTUFAR CORIA, | : | MOTION TO VACATE |
| Fed. Reg. No. 70330-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:16-CR-321-TWT-JSA |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:18-CV-4524-TWT-JSA |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Gildardo Montufar Coria has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 82). Movant seeks to challenge the constitutionality of his convictions and sentences following his guilty plea in the Northern District of Georgia.

## I.    Procedural and Factual History

In October of 2014, the Drug Enforcement Administration initiated an investigation of a drug trafficking operation in the Atlanta metropolitan area involving a man named Victor Capote. (Doc. 64, Presentence Investigation Report ("PSR") ¶9). Agents received information from a confidential source ("CS") that Capote distributed drugs including methamphetamine, heroin, and cocaine. (*Id.*). After executing controlled buys from Capote, agents identified Movant as Capote's heroin and cocaine source of supply. (*Id.*). Movant dealt in kilogram quantities of cocaine and nine-ounce quantities of heroin. (*Id.*). Once Movant supplied those

drugs to Capote, Capote then distributed the drugs to others, including Elgin Jordan and Willie Leonard.  (PSR ¶¶10-13).

On March 31, 2015, federal agents intercepted calls between Capote and Leonard during which Capote arranged to sell nine ounces of heroin to Leonard at 8:00 p.m. at the address of a stash house that Leonard operated, *i.e.,* at 484 Peyton Road in Atlanta.  (*Id.* ¶¶13, 25, 27-28).   Immediately thereafter, Capote called Movant to see if he still had nine ounces of heroin available because he had a customer who wanted the nine ounces at 8:00 that same day.  (*Id.* ¶25).  Movant responded that he did.  (*Id.* ¶26).  Agents believed that Movant already knew where he was supposed to deliver the nine ounces.  (*Id.*).

At 8:00 that evening agents saw Capote's car arrive and park at 484 Peyton Road.  (*Id.* ¶28).  At 8:53 p.m. Capote called Movant to ask how much longer Movant would be, and Movant told Capote to give him about ten minutes.  (*Id.*).  Capote then told Movant to call him when Movant got there so that he could let Movant inside. (*Id.*).  At 9:11 p.m. Movant called Capote to say he was outside, and cell site data showed that Movant's phone had, in fact, traveled from the area of Movant's home to the area of 484 Peyton Road.  (PSR ¶¶29, 33).  Leonard arrived around 9:25 p.m., and Movant and Capote gave him the nine ounces of heroin.  (*Id.* ¶31).  A pole camera in the area showed that Capote's car left 484 Peyton Road at around 10:01

p.m., and soon after that agents observed that Capote was the only one in the car. (PSR ¶32).

The CS provided details about Movant's other heroin sales:  that Movant supplied nine ounces of heroin at 484 Peyton Road on four separate occasions, including March 12, 2015 and in April of 2015.[1]  (*Id.* ¶¶34-35).  On March 12, 2015, cell site data showed that Movant's cell phone was, in fact, in the area of 484 Peyton Road.  (*Id.* ¶34).

On September 13, 2016, a federal grand jury indicted Movant and charged him with three counts:  conspiring to possess with the intent to distribute controlled substances (heroin and cocaine), possessing with the intent to distribute cocaine and possessing the intent to distribute heroin, in violation of 21 U.S.C. §§841(a)(b)(1)(C), 846 and 18 U.S.C. §2.  (Doc. 1).  On March 14, 2017, Movant entered a non-negotiated plea to all three counts of the indictment.  (Doc. 44-1).  On November 2, 2017, Chief U.S. District Judge Thomas W. Thrash, Jr. sentenced Movant to fifty-seven months of imprisonment.  (Doc. 60).

Through his attorney, Movant filed an appeal with the Eleventh Circuit and raised two issues:  (1) the Court erred in concluding that he sold heroin on four occasions, and (2) the use of his statements made during his safety valve interview

---

[1]     The PSR also sets out the facts surrounding Movant's supply of one kilogram of cocaine to Capote on March 2, 2015, who in turn sold it to Jordan.  (PSR ¶¶15-24).  Movant, however, does not raise any challenges to this transaction.

to increase his base offense level is inconsistent with public policy and the advisory sentencing guidelines because it effectively nullified the safety valve reduction he received.   (Doc. 80 at 2).   The Eleventh Circuit affirmed his convictions and sentences on August 16, 2018.  (*Id.*).[2]

Movant filed the instant §2255 motion on September 24, 2018, and raises four claims of ineffective assistance of counsel, in that counsel was ineffective because he:  (1) did not object to the fourth heroin transaction which increased Movant's base offense level by two points; (2) induced Movant to enter a plea agreement without receiving any benefits other than the safety valve provision; (3) failed to seek a downward departure to avoid a sentencing disparity between Movant and the defendant in *United States v. Mary Adams*; and (4) failed to move to withdraw Movant's guilty plea when the plea agreement did not include a minor role reduction. (Doc. 82).  For the following reasons, the undersigned **RECOMMENDS** that the instant §2255 motion be **DENIED**.

II.    Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences.

---

[2]    Movant filed a *pro se* §2255 on February 5, 2018 [Doc. 74]; however, because his appeal was pending the Court dismissed it without prejudice.  (Docs. 76, 78).

*United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.   Analysis

    A.   The Standard For Evaluating Ineffective Assistance Of Counsel Claims

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018). *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). Instead, an ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'"

6

*McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992).  *See also Strickland*, 466 U.S. at  697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.* at 59.  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*."  *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

B.   Movant Has Failed To Demonstrate Ineffective Assistance Of Counsel.

1.   *Ground One*

Movant states in Ground One that counsel was ineffective for failing to challenge the fourth heroin transaction included in the final PSR.  As an initial matter, the probation officer revised the PSR twice before sentencing.  The first PSR included three nine-ounce heroin transactions that occurred on March 12, 2015,

7

March 31, 2015, and in April of 2015.  (*See* PSR ¶41 Gov't Objs. & Prob. Officer's Resp.).  Those three transactions, in addition to the one kilogram cocaine transaction on March 3, 2015, converted to a marijuana equivalency of 965.45 kilograms and resulted in a base offense level of 28 according to U.S.S.G. §2D1.1(c)(6).

The Government objected to that amount, however, indicating that the CS advised that Movant had supplied at least nine ounces of heroin at the 484 Peyton Road address on at least four occasions, which the cell site data and pole camera surveillance supported, and Movant admitted to having completed "four to five" such transactions during his safety valve interview.  (*Id.*).  The probation officer then revised the PSR to include a fourth transaction, changing the marijuana equivalency to 1,220.6 kilograms and increasing Movant's base offense level to 30.  (PSR ¶¶41, 46).

In Movant's sentencing memorandum, Movant's counsel objected to that fourth heroin transaction, arguing that:  neither Movant nor the CS was entirely certain about how many heroin transactions Movant actually engaged in; the Government's cell data was unreliable because cell towers have a range of approximately twenty-one miles and certain factors such as heavy traffic can cause a cell signal to be relayed or sent to a tower farther away; and using Movant's safety valve interview statements as evidence of the fourth transaction would create a disincentive for a defendant to be completely truthful if information gleaned from

8

his safety valve interview could be used against him.  (Doc. 58 at 4-8).   Movant's counsel again reiterated this objection during the sentencing hearing and, as discussed previously in Section I, also raised the issue as error on appeal.  (Doc. 72 ("Sentencing Tr." at 3-5); Doc. 80 at 2).

Nevertheless, Judge Thrash overruled Movant's objection and found that there was "adequate evidence" to support the four heroin transactions.  (Sentencing Tr. at 7-8).   And the Eleventh Circuit found that "the evidence presented at sentencing sufficiently supports the district court's finding that Mr. Coria made four deliveries of heroin."  (Doc. 80 at 3).   Thus, counsel raised this issue and it was decided adversely to Movant.   Counsel plainly could not have been deficient for failing to raise an issue that he did, in fact, actually raise, even if ultimately his challenge was unsuccessful.  *See Hyacinth v. United States*, Nos. 1:06-CR-0172-TWT-CCH-6, 1:10-CV-3797-TWT-CCH, 2012 WL 2132278, at *6 (N.D. Ga. Mar. 5, 2012) ("The fact that counsel's argument was unsuccessful fails to show that he was ineffective.") (citing to *Lopez v. United States*, Nos. 8:04-CR-336-T-17MSS, 8:07-CV-2293-T-17MSS, 2008 WL 3889586, at *4 (M.D. Fla. Aug. 18, 2008)).   Movant, therefore, is not entitled to relief in connection with Ground One.

### 2.    *Ground Two*

In Movant's second ground for relief, he claims that his attorney induced him to enter a plea agreement without any benefits other than the safety valve provision.

First, Movant did not enter his plea pursuant to any plea agreement. (*See* Doc. 44-1; Doc. 71 ("Plea Tr.") at 10-11). In fact, Movant rejected two previous plea offers and specifically decided to take his chances without an actual plea agreement. (Plea Tr. at 11-12).

Regardless, Movant's sworn testimony during the plea colloquy – which carries a strong presumption of truth, *Blackridge v. Allison*, 431 U.S. 63, 74 (1977) – indicates that he did, in fact, enter into his plea knowingly and voluntarily. Indeed, during the plea hearing Movant swore that: he was satisfied with his attorney's representation; he discussed with his attorney the charges to which he was entering a guilty plea; he had had sufficient time to think about and discuss the matter fully with his attorney before entering his plea; he understood that if his sentence was more severe than he expected he would still be bound by his guilty plea and have no right to withdraw it; no one threatened or forced him to plead guilty; no one told him that if he did not plead guilty further charges would be brought against him; no one promised him what his actual sentence would be; and no one advised him not to tell the complete truth that day. (Sent. Tr. at 8-13, 19).

Movant has not argued or brought forth any evidence whatsoever to demonstrate that his plea was anything other than knowing and voluntary. *Cf. Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (finding the movant's allegations that his plea was not voluntary were in direct conflict with his statements

10

during the plea colloquy, he produced no evidence to challenge the veracity of his sworn testimony, and his last minute self-serving statements were therefore insufficient to demonstrate that his plea was not entered into voluntarily). Consequently, Movant is not entitled to relief in connection with Ground Two.

### 3.   *Ground Three*

In Ground Three Movant claims that counsel should have sought a downward departure to avoid a sentencing disparity between him and the defendant in *United States v. Mary Adams*, No. 16-CR-0301 (WFK), 2017 WL 2615440, at *1 (E.D.N.Y. June 16, 2017). To be clear, 18 U.S.C. §3553(a) specifies several factors a court must consider in imposing a sentence, one of which includes "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. §3553(a)(6). Judge Thrash made it clear that he did, in fact, take into consideration the §3553(a)(6) factors. (Sentencing Tr. at 20).

To the extent that Movant utilizes the defendant's sentence in *United States v. Adams* to claim that counsel should have pointed to a sentencing disparity between Adams and Movant, however, his argument is misplaced. Indeed, §3553(a)(6) only requires the court to consider sentence disparities among defendants who are similarly situated. *See, e.g., United States v. Holt*, 777 F.3d 1234, 1269-70 (11th Cir. 2015) ("[W]e will not find a sentence disparity . . . to be 'unwarranted' when

11

they are not similarly situated."); *United States v. Bard*, 625 F. App'x 57, 60 (3d Cir. 2015) ("[Section] 3553(a)(6) only requires the court to consider 'sentence disparities' among defendants who are similarly situated in all relevant respects."). Movant and Adams, however, are not similarly situated.

In *Adams*, the defendant was considered a minimal participant because she was a drug courier transporting drugs on behalf of someone else. *See generally Adams*, 2017 WL 2615440, at *2-3. On the other hand, Movant was by no means a minor participant and did not qualify as such, since he was a drug supplier who procured the drugs for Capote to distribute and sell to others.[3] Where Movant's guideline range was fifty-seven to seventy-one months, Adams's range was lower at thirty-seven to forty-six months. *Adams*, 2017 WL 2615440, at *3. Finally, the court in *Adams* granted Adams a downward departure after finding that a Guidelines sentence would impose extraordinary hardship on her family because Adams was the primary caregiver of a disabled child who already had demonstrated problems while she was incarcerated, and she provided childcare for her grandson while her daughter worked at night. *Id.* at *4  Here, there is no indication that Movant is the primary caregiver for any of his three children or that their mother(s) would not be able to adequately care for them in his absence, and it appeared that at least one of

---

[3]     The undersigned will discuss this issue more thoroughly in Section III.B.4., *infra*.

his children did not, in fact, live with him. (*See* PSR ¶¶70-71; Doc. 58 at 1). Movant, therefore, cannot show that he is similarly situated to the defendant in *Adams* and, as a result, he cannot demonstrate that counsel's failure to raise the disparity of Adams's sentence compared to his own was objectively unreasonable. *Cf. United States v. Scott*, 403 F. App'x 392, 399 (11th Cir. 2010) (holding district court did not have to give significant weight to the need to avoid sentencing disparities where, *inter alia*, the defendant played a much greater role in the conspiracy than his co-defendants and thus did not show that they were similarly situated).

Nor can Movant demonstrate that the outcome would have been different even had Movant's counsel raised the sentence disparity from that of the defendant in *Adams*. Indeed, Judge Thrash indicated that he sentenced Movant to the "low-end of the guidelines range," which he thought was "fair and reasonable" considering "all the facts and circumstances of the case." (Sentencing Tr. at 19-20). As noted by the Government, it would be mere speculation to argue that the Court would have reached a different outcome because of *Adams*, and any such speculation is insufficient to establish prejudice. *See United States v. Gooding Munoz*, 154 F. App'x 120, 122 (11th Cir. 2005) ("if '[w]e just don't know' whether the defendant would have received a lesser sentence . . . the defendant has not met his burden of showing prejudice."); *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005) ("[W]here the effect of an error on the result in the district court is uncertain

or indeterminate – where we would have to speculate – the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice[.] . . .").  Thus, Movant is not entitled to relief in connection with Ground Three.

        4.    *Ground Four*

Movant argues in Ground Four that counsel should have moved to withdraw Movant's guilty plea when the plea agreement did not include a minor role reduction. Again, Movant did not proceed pursuant to a plea agreement.  And Movant did not qualify for a minor role reduction.

To that end, the Sentencing Guidelines provide for a two-level reduction for a defendant who is a "minor participant" in the criminal activity, defined as one who is "less culpable than most other participants, but whose role could not be described as minimal."  U.S.S.G. §3B1.2 & comment. (n.5).  The two-level minor participant reduction "would be appropriate, for example, . . . in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs."  *Id.*

In evaluating the defendant's role in the offense, the district court must look at all of his relevant conduct.  *United States v. Rodriguez De Varon*, 175 F.3d 930, 940 (11th Cir. 1999).  "In other words, the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct

attributed to the defendant in calculating [his] base offense level." *Id.* at 941.  The district court should consider two principles:  "first, the defendant's role in the relevant conduct for which []he has been held accountable at sentencing; and, second, [his] role as compared to that of other participants in [his] relevant conduct." *De Varon* , 175 F.3d at 940.

On five occasions Movant supplied to Capote, who in turn sold to Leonard and Jordan, one kilogram of cocaine and twenty-seven ounces of heroin, which converts to 1,220.6 kilograms of marijuana equivalency.  Where, as here, the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot demonstrate that he was entitled to a minor role reduction.  *See United States v. Caicedo-Rosero*, 390 F. App'x 893, 898 (11th Cir. 2010) ("Because Caicedo-Rosero's relevant conduct was limited to the drugs that he admitted to conspiring to transport, the district court legitimately concluded that he did not play a minor role in the importation of those drugs."); *United States v. Kirby*, 208 F. App'x 694, 696 (11th Cir. 2006) (finding district court did not err by not granting minor role reduction where the defendant's actual conduct was the same as the relevant conduct attributed to him).

Moreover, Movant's relevant conduct demonstrates that he was at the top of the distribution chain; *i.e.,* without his ability to procure the cocaine and heroin the transactions would not have occurred.  Movant, therefore, also cannot show that he

was less culpable than the other participants.  *See, e.g., United States v. Medina*, 266 F. App'x 877, 881-82 (11th Cir. 2008) (concluding district court did not err in not granting minor role reduction to defendant who supplied and shipped large amounts of cocaine from Mexico); *De Varon*, 175 F.3d at 945 (indicating that relevant facts in determining role in the offense include, *inter alia*, the role in the distribution).

Consequently, counsel was not professionally unreasonable for failing to seek a minor participant reduction or move to withdraw Movant's guilty plea because he did not receive this reduction.  *See, e.g., Reynolds v. United States*, Nos. 4:18-CV-840-A, 4:15-CR-271-A, 2018 WL 6330736, at *3 (N.D. Tex. Dec. 4, 2018) (finding counsel not ineffective for failing to argue for minor role reduction where, *inter alia*, the movant supplied methamphetamine to a co-defendant who distributed to others); *Chiong v. United States*, Nos. 8:01-CR-0037-T-30EAJ, 8:02-CV-2237-T-30EAJ, 2006 WL 923765, at *5 (M.D. Fla. Apr. 10, 2006) (finding no ineffective assistance of counsel for failing to request a minor role reduction since the movant supplied kilogram quantities of cocaine to another person for further distribution to others). For the same reasons, Movant cannot establish prejudice from any failure by counsel to request a minor role reduction.  Accordingly, Movant is not entitled to relief in connection with Ground Four.

IV.    Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Gildardo Montufar-Coria's motion to vacate his sentence [Doc. 82] be **DENIED WITH PREJUDICE**.

V.    Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other

17

words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant has not demonstrated that he received ineffective assistance of counsel and/or that his plea was, in fact, knowing and voluntary. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 19th day of February, 2020.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE